**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCY BROWN | : | Case No.   1:23-CV-240 |
| 202 Buffalo Street | : | |
| Franklin, PA 16323 | : | |
| | : | |
| Plaintiff, | : | COMPLAINT |
| | : | |
| vs. | : | FILED ON BEHALF OF: |
| | : | Plaintiff, Marcy Brown |
| FRANKLIN AREA SCHOOL DISTRICT | : | |
| 40 Knight's Way | : | COUNSEL OF RECORD FOR |
| Franklin, PA 16323 | : | PARTY: |
| | : | Neal A. Sanders, Esquire |
| and | : | PA ID NO. 54618 |
| | : | Law Offices of Neal A. Sanders |
| EUGENE THOMAS, Superintendent of | : | 262 South Water Street, |
| Franklin Area School District | : | Suite 200 |
| 40 Knight's Way | : | Kittanning, PA  16201 |
| Franklin, PA 16323 | : | |
| | : | (724) 919-8884 |
| and | : | |
| | : | JURY TRIAL DEMANDED |
| THOMAS HOLOMAN, Co-Principal of | : | |
| Franklin Jr. Sr. High School | : | |
| 40 Knight's Way | : | |
| Franklin, PA 16323 | : | |
| | : | |
| and | : | |
| | : | |
| KRIS MILLER, Co-Principal of | : | |
| Franklin Jr. Sr. High School | : | |
| 40 Knight's Way | : | |
| Franklin, PA 16323 | : | |
| | : | |
| Defendants. | : | |

**<u>COMPLAINT AND JURY DEMAND</u>**

Plaintiff Marcy Brown, complaining of Defendants Franklin Area School District, Eugene

Thomas, Thomas Holoman, and Kris Miller, alleges as follows:

**PARTIES**

1.  Plaintiff, Marcy Brown (formerly Marcy Lusher), is an individual citizen who

1

currently resides at 202 Buffalo Street, Franklin, Pennsylvania  16323.

2.  Defendant, Franklin Area School District ("Defendant School District"), is the primary and secondary public school district for the Franklin area.  Defendant has administrative offices and principle place of business located at 40 Knight's Way, Franklin, Pennsylvania 16323.

3.  Defendant, Eugene Thomas ("Defendant Thomas"), is the Superintendent of Defendant Franklin Area School District.  Defendant Thomas has a business address of  40 Knight's Way, Franklin, Pennsylvania 16323.  This action is being brought against Defendant Thomas in both his individual and official capacities.

4.  Defendant, Thomas Holoman ("Defendant Holoman"), is a Co-Principal of Franklin Jr. Sr. High School.  Defendant Holoman has a business address of  40 Knight's Way, Franklin, Pennsylvania 16323.  This action is being brought against Defendant Holoman in his official capacity.

5.  Defendant, Kris Miller ("Defendant Miller"), is a Co-Principal of Franklin Jr. Sr. High School.  Defendant Miller has a business address of  40 Knight's Way, Franklin, Pennsylvania 16323.   This action is being brought against Defendant Miller in his official capacity.

**JURISDICTION AND VENUE**

6.  This action arises under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983.

7.  Jurisdiction over Count I of this action is conferred upon this Court by 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.  Jurisdiction over Count II is conferred upon this Court by 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331.  Jurisdiction over Count III is conferred upon this Court by 28 U.S.C. § 1331.

8.  Venue is properly laid in the Western District of Pennsylvania, because the Defendant is situate within this District and all transactions and occurrences which give rise to this action occurred within this District.

### COUNT I
### ADEA
### v. Defendant Franklin Area School District
### Hostile Environment/ Unlawful Termination / Constructive Discharge

9.  Defendant School District is an employer within the meaning of the ADEA, 29 U.S.C. § 630(b)(2) which includes within the definition of employer "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State..."

10.  At all times relevant hereto, Plaintiff, who was born in 1974, was a member of the class protected by the ADEA.

11.  In or about 1997, Plaintiff was initially employed by the Defendant as a teacher. Plaintiff continued to be employed in this capacity until January 30, 2023.  Plaintiff was last employed at  Franklin Jr. Sr. High School.

12.  At all times relevant hereto, Plaintiff was qualified for the position of teacher. Plaintiff has maintained all professional degrees and certifications necessary for the position, and in her most recent performance evaluations, Plaintiff was rated as distinguished, the highest possible rating.

13.   Shortly after staff returned from "Covid leave" in 2021, Carlo Delmo, an administrator of the Defendant School District, stated during a board meeting that, "It's time for old teachers to go." Mr. Delmo made similar statements to numerous individuals, including Plaintiff, from 2021 through the summer of 2022.  Mr. Delmo was not reprimanded or censored by the Defendant School District for these statements.

14.   On or about April 6, 2021, Defendant Holoman, who was then Principal of Sandycreek Elementary, told Ms. Johnson and Ms. Daye that, "Any teacher needs to retire after twenty years of teaching."

15.   In June 2023, during collective bargaining agreement negotiations, Defendant Thomas told union negotiators that the new contract was "designed to get the older teachers to retire."

16.   On October 19 and 20, 2022, a number of students from Plaintiff's class were summoned to the principals' office without explanation.

17.   On October 20, 2022, Defendants Miller and Holoman told Plaintiff that the students were being questions because of a complaint that Plaintiff had said something in class about another staff member.  Defendant Miller assured Plaintiff that she wasn't in trouble.

18.   On October 24, 2022, Plaintiff was told, at the end of the work day and without any prior notice, to report to the principals' office for a meeting with Defendants Miller and Holoman and the union president.

19.   During the October 24, 2022 meeting, Plaintiff was informed that "serious allegations" had been made against her, and that she was being placed on paid administrative leave.

20.   Both Plaintiff and the union president objected to the fact that they weren't being told

the substance of the "serious allegations."  The union president further noted that placing a teacher on administrative leave without providing a reason was unprecedented.

21.  Defendants Holoman and Miller informed Plaintiff and the union president that they were merely the messengers and were following Defendant Thomas' instructions.

22.  On October 24, 2022, Plaintiff was placed on paid administrative leave without being informed why this was occurring.

23.  During the October 24, 2022 meeting, Plaintiff was also told by Defendants Holoman and Miller not to discuss anything related to the matter with anyone.  Plaintiff was also instructed by said Defendants to put teaching materials together and give them to Ms. Winslow, and to contact the yearbook co-advisor about what to do with the yearbook.

24.  As instructed, Plaintiff prepared teaching materials and provided them to Ms. Winslow and spoke to the yearbook co-advisor.

25.  On October 25, 2022, Defendant Thomas sent Plaintiff a warning letter for speaking to other staff about the matter, despite the fact that she was instructed to talk to staff by Defendants Holoman and Miller, as set forth above, and at the time, Plaintiff did not know anything about the accusations that were being made against her.

26.  Plaintiff subsequently learned that a student had accused her of placing her hand on his shoulder during class, dropping papers and bending over to pick them up, referring to him as "hot" and commenting that she "bets he gets all the ladies" while they were allegedly alone in the classroom before first bell, and yelling at him for being disrespectful to the school's football team and for telling another student to move because she was coughing behind him.

27.  In fact, Plaintiff had placed her hand on the student's shoulder for less than thirty

seconds so that she could lean over him and examine work that he had asked her to review without having her torso come into contact with him.  Plaintiff did accidently drop papers while passing them out to the class, but squatted to collect them rather than bending over.  Plaintiff was not alone in the classroom with the student at any time.  On the morning in question, the door to the adjacent "pub room," where work on the yearbook is performed, and the hallway were open, and students, staff, and Plaintiff were continuously moving in and out of the classroom.  Plaintiff did not refer to the student as "hot" nor did she make any comments that would make assumptions about his sexual orientation.  Plaintiff did chastise the student for making disparaging remarks about the school's football team, while football players were in the room, and for the statements he made to another student who was coughing near him.

28.  In or about the end of October 2022, employees of the Defendant School District ransacked Plaintiff's classroom and the "pub room" during school hours and in front of Plaintiff's students, even though the allegations against her at the time, as set forth in Paragraph 26, had nothing to do with any classroom materials.  At the conclusion of the search, a sign prohibiting entry to anyone was placed on the door to the "pub room."

29.  The ransacking of Plaintiff's classroom in front of students and the sign on the "pub room" resulted in numerous false rumors being spread throughout the community, including that "adult toys" had been found in Plaintiff's desk or in the "pub room."

30.  Although the Defendant School District was aware of such rumors, it did not release a statement, or take any other action, to dispel them.

31.  In or about the end of October, 2022, Defendants Holoman, Thomas and Miller had all of the students from Plaintiff's class line up outside the administrative offices and questioned

them one by one without a parent or a union official representing Plaintiff being present.

32.  Plaintiff subsequently learned that one student, who is on yearbook staff, when asked about the alleged comment about another teacher, explained that Plaintiff's statements concerning diet was relevant to the material being taught, that Plaintiff didn't mention the other teacher by name, and that Plaintiff's statements were not derogatory.

33.  The yearbook staff student also informed Defendants Holoman and Miller that Plaintiff had never done or said anything that made her uncomfortable and that she did not know of anyone who viewed Plaintiff as anything other than a mother figure.

34.  One student, a friend of Plaintiff's daughter, had dinner at Plaintiff's house on one occasion after he, Plaintiff's daughter, and Plaintiff's daughter's boyfriend had assisted in the search for a missing child.

35.  Plaintiff's daughter's friend was questioned on five separate occasions by Defendant Thomas.  In each session, Plaintiff's daughter's friend was repeatedly asked questions such as: "Did [Plaintiff] ever try to touch you?"; "Did [Plaintiff] ask you to have sex with her?"; and "Did you see [Plaintiff's] bedroom?"

36.  When Plaintiff's daughter's friend continued to deny that anything inappropriate had occurred and that he had only been at Plaintiff's house for dinner at the suggestion of Plaintiff's daughter, Defendant Thomas threatened to confiscate and then did confiscate Plaintiff's daughter's friend's phone for twenty-four hours.

37.  By letter dated October 28, 2022, Venango County Children and Youth Services informed Plaintiff that it was initiating an investigation into allegations of "causing sexual abuse or exploitation of a child through any act/failure to act – participating in sexually explicit

conversation." This investigation was connected to the allegations set forth in Paragraph 26 hereof.

38. By letters dated October 30, 2022, Venango County Children and Youth Services informed Plaintiff that it was initiating investigations into two other allegations of "causing sexual abuse or exploitation of a child through any act/failure to act – participating in sexually explicit conversation." Although the letters informed Plaintiff of the identities of the students who made complaints about her, she was not provided with a written complaint, written statement, or witness summary setting forth the allegations made by these individuals until December 27, 2022, when the CYS read the Childline documents to Plaintiff.

39. In late October 2022 through mid-November 2022, Defendants Thomas, Holoman and Miller informed all staff members that they were not to talk to Plaintiff and that Plaintiff would not be coming back.

40. The prohibition against any communication between Plaintiff and other staff members prevented Plaintiff from identifying favorable witnesses, impeding her ability to prepare a defense.

41. On or about October 30, 2022, Plaintiff was informed by Defendant Thomas that she was to attend a meeting on November 8, 2022 concerning the recent allegations of misconduct against her. In a departure from Defendant School District's policies and its obligations under the CBA, Plaintiff was not informed what the allegations were, thereby preventing her and her representatives from preparing for the meeting.

42. On or about November 2, 2022, the Defendant School District sent letters to the parents of three potential student witnesses. The letters contained Plaintiff's name and a

description of the allegations that had been made against her, even though Plaintiff had not yet

been informed of same at the time.

43.  By letter dated November 2, 2022, but not post-marked until November 7, 2022,

Plaintiff was informed that a Title IX investigation was being opened against her.  The

allegations listed in the letter were those set forth in Paragraph 26 hereof, with the additional

allegation that Plaintiff had made comments concerning her breasts in front of her class.

44.  Plaintiff never made comments concerning her breasts in front of students and, in

fact, wore loose and layered clothing to de-emphasize their presence.  On one occasion, a cover-

up that Plaintiff was wearing became tangled around her chest.  While untangling it, she

muttered, "Always a struggle."

45.  On November 8, 2022, Plaintiff and her union appointed lawyer met with Defendant

Thomas.  During this meeting, Defendant Thomas asked Plaintiff approximately forty questions

ranging from the origin of her high school nickname, to her personal life, to the tone in which she

had read excerpts from *The Color Purple*.  Defendant Thomas continued to ask questions of this

nature even when Plaintiff's union attorney directed her not to answer many of Defendant

Thomas' questions due to the ongoing CYS investigation.

46.  The Defendant School District and Defendant Thomas were aware that Plaintiff's

ability to respond to the allegations against her was hampered by the ongoing CYS investigation,

and they had the authority to delay the Loudermill hearing and Title IX investigations until the

CYS investigation was concluded.  However, they chose not to do so.

47.  During the November 8, 2022 meeting, the union president informed Defendant

Thomas that there was a distinct "pub room" culture predating Plaintiff's tenure, and that this

culture explained some of the allegations, such as swearing in front of students.  Defendant Thomas did not take this into account at any time during the investigation.

48.  On November 9, 2022, Defendant Thomas issued a list of charges and notice of Loudermill hearing, which was scheduled by the letter to take place on November 15, 2022.

49.  The November 9, 2022 list of charges included using profanity in front of students, which Plaintiff denies doing.  However, Defendant Holoman, who is substantially younger than Plaintiff, had used profanity over the PA system and in front of students in the administrative offices.  His use of profanity in the administrative offices was so prolific that he had his own swear jar.  Defendant Holoman was not placed on administrative leave, investigated or otherwise disciplined for his use of profanity.

50.  The November 9, 2022 list of charges includes allegations that Plaintiff bent over in front of a student and made references to her breasts, both of which Plaintiff denies.  Ms. Geer, a teacher employed by the Defendant School District who is substantially younger than Plaintiff, posts pictures of herself on social media, with such content including her in a suggestive poses wearing only her underwear or a bikini.  Some of the photos posted by Ms. Geer were taken in her bedroom.

51.  A number of male students within the Defendant School District "follow" Ms. Geer's social media account, and Ms. Geer has interacted with the students on that social media platform.

52.  On October 14, 2022, Plaintiff brought Ms. Geer's social media account, and her interaction with male students on it, to Mr. Holoman's attention.  As of January 10, 2023, Ms. Geer's social media account remained unchanged and continued to be accessed by male students.

Ms. Geer was not placed on investigative leave, investigated or otherwise disciplined for her actions.

53.  Numerous teachers and staff members who are substantially younger than Plaintiff routinely place their hands on students' shoulders and/or backs and are not placed on administrative leave, investigated or otherwise disciplined for their actions.

54.  On November 14, 2022, Defendant Thomas directed Ms. Winslow to come to the administrative office where he asked her loaded questions including whether she knew that "[Plaintiff] was having sex with students at her house?"  Ms. Winslow responded that the questions were ridiculous, out-of-line, and utterly baseless.  There were never any allegations or accusations made against Plaintiff that would justify the assumption of fact in Defendant Thomas' questions.

55.  In early November 2022, Defendants Holoman and Miller questioned Ms. Kossick, the teacher about whom Plaintiff had allegedly made the diet comment.  During this questioning, Ms. Kossick told them that she doubted Plaintiff had made the alleged comment, that she didn't care if Plaintiff had done so, and that she was not going to be a part of whatever they were trying to do.

56.  Acting on the advice of her union and CYS attorneys, Plaintiff did not attend the November 15, 2022 Loudermill hearing.

57.  At the November 15, 2022 Loudermill hearing, Defendant Thomas insisted to Plaintiff's representatives that her personal attendance was required at the hearing and only relented after contacting Defendant School District's attorney.

58.  At the November 15, 2022 Loudermill hearing, Plaintiff's attorneys categorically

11

denied the allegations of misconduct that had been made against Plaintiff but again reminded Defendant Thomas that Plaintiff's ability to respond to the allegations was impaired by the fact that the CYS investigation was ongoing.

59. During the November 15, 2022 Loudermill hearing, Plaintiff's representatives were provided with the written complaint by the student who made the allegations set forth in Paragraph 26, and four "Witness Summaries" summarizing the statements of friends of the complaining party, each of which summaries supported a few of the allegations made by the complaining party.

60. Although a number of students and staff who were interviewed by Defendants Thomas, Holoman and Miller, including those identified in Paragraphs 32, 33, 36, 47, 54 and 55 among others, provided information that disputed the veracity of the allegations of misconduct against Plaintiff, the individual Defendants did not prepare "Witness Summaries," written statements recording the information they provided or otherwise make their testimony part of the investigatory record, nor did they pursue any leads that could have absolved Plaintiff at any time during the investigation.

61. The complaint and witness summaries provided by Defendant Thomas are only relevant to the allegations summarized in Paragraphs 26 and 43 and do not provide any support for the majority of the November 9, 2022 list of charges that he prepared. Defendant Thomas did not provide any evidence, written or otherwise, that support these allegations.

62. Several hours after the November 15, 2022 Loudermill hearing, Defendant Thomas sent a letter to Plaintiff informing her that her administrative leave was being changed from paid to unpaid. At this time, Plaintiff only had nine days remaining until she attained twenty-five

years of service.  The change to unpaid leave prevented her from acquiring twenty-five years of service, which had a substantial impact on her pension annuity.

63.  On November 16, 2022, the union requested all information that the Defendant School District used to support the decision to place Plaintiff on unpaid suspension.  The Defendant did not comply with this request.

64.  On November 17, 2022, Mr. Zaruto, labor attorney for Defendant School District, contacted Plaintiff's union attorney and offered a separation agreement in exchange for Plaintiff's resignation and release of claims.  Plaintiff refused this offer.

65.  In mid November 2022, the police responded to a call at the Franklin Jr. Sr. High School that was not connected to Plaintiff.  This resulted in rumors spreading throughout the community that Plaintiff had been arrested as a result of the allegations made against her.  The Defendant School District knew of these rumors but did not release a statement or take any other action to inform students, staff and the general public of the truth.

66.  On November 30, 2022, Attorney Zaruto emailed Plaintiff's union attorney and, after reminding Plaintiff's attorney that the decision in the Title IX proceeding would be forthcoming, again offered a separation agreement that would include Plaintiff's resignation and a release of claims.  Plaintiff again refused the offer.

67.  On December 7, 2022, Plaintiff, through her union attorney, provided a written response to the Title IX investigator, in which she both denied, through factual averments, the allegations of misconduct that had been made against her and requested the dismissal of the Title IX complaint on the grounds that, even if the allegations were true, they did not fall within Title IX's definition of sexual harassment.

13

68.  On December 27, 2022, Plaintiff and her representatives met with the CYS investigator, the caseworker for the student who made the complaint summarized in Paragraph 26, and the County Solicitor.  The caseworker(s) for the students who made the two other complaint was/were not present.

69.  CYS investigators had interviewed the complainants and their families, and the Childline reports were read verbatim during the meeting.

70.  Accordingly to the Childline report, the student who complained, in part, that Plaintiff had placed her hand on his shoulder had acknowledged that this took place only for thirty seconds or less.

71.  By letters dated January 3, 2023, CYS determined that the three complaints made against Plaintiff were unfounded.

72.  By letter dated January 5, 2023, Plaintiff and her representatives informed the Title IX investigator that CYS had determined the complaints to be unfounded and provided detailed factual accounts concerning the other allegations that had been made against her.

73.  On January 10, 2023, Mr. Keenan issued the initial Title IX determination which found Plaintiff responsible for all allegations, including those that had been determined to be unfounded by CYS and those that were not supported by any evidence provided by the Defendant School District to Plaintiff.

74.  On January 23, 2023, Defendant Thomas sent Plaintiff another list of charges and notice of Loudermill hearing. This list of charges includes allegations that had been determined to be unfounded by CYS and others that were not supported by any evidence provided by the Defendant School District to Plaintiff.

75. By letter dated January 24, 2023, Plaintiff provided, for the purpose of the second Loudermill hearing, a response to the allegations from the complaint made against her, as set forth in Paragraphs 26 and 27 hereof.

76. On January 27, 2023, Attorney Zaruto, at the direction of Defendant Thomas, sent an email to Plaintiff's union attorney stating that a special meeting of the Defendant School District's board of directors would be held on February 1, 2022 for the purpose of approving the list of charges against Plaintiff.  Attorney Zaruto further stated that the full list of charges prepared by Defendant Thomas on January 23, 2023 would be posted on the Defendant School District's website twenty-four hours prior to said meeting unless Plaintiff resigned.

76. By letter dated January 30, 2023, Plaintiff's union attorney informed Attorney Zaruto that it was the union's position that that posting the list of charges would be contrary to Defendant School District's policies and the CBA.

77. On January 31, 2023, Attorney Zaruto sent an email to Plaintiff's union attorney stating that Plaintiff had until 4:00 p.m. that day to resign or risk having the charges posted on the Defendant School District's web page.

78. The Defendants' gross mismanagement of the investigation, as set forth above, fostered the spread of rumors concerning Plaintiff throughout the community which the Defendants did nothing to quell.  As a result, after the start of the investigation, Plaintiff's reputation within the community was so severely damaged that she was unable to go out into public without being met with hostility and suspicion.

79. As a result of the false rumors fostered by the Defendants and the false and unfounded allegations made against her, Plaintiff experienced stress, anxiety, depression and an

extreme loss of self esteem.

80.  By reason of the foregoing, the Defendant School District, acting through its servants, agents and employees, knowingly permitted and created a hostile environment because of Plaintiff's age.  As set forth herein, the harassment and disparate treatment was sufficiently severe to alter the terms and conditions of Plaintiff's employment.

81.  Plaintiff could not allow her reputation to be further damaged by the public posting on the internet of the unsubstantiated and unfounded charges against her, particularly as those charges would then be readily and permanently available to any future potential employers, students and parents.  Accordingly, Plaintiff tendered her involuntary resignation at 3:57 p.m. on January 31, 2023.

82.  Because Plaintiff's resignation was the product of extortion that left her no viable alternative, it was effectively a termination.

83.  In the alternative, Plaintiff was constructively discharged because the conditions of her employment had become so intolerable that a reasonable person in her position would have felt compelled to resign.

84.  Following Plaintiff's termination or constructive discharge, the Defendant School District hired an individual who is substantially younger than Plaintiff to replace her as teacher.

85.  As the direct and proximate result of the Defendant School District's actions set forth above, the Plaintiff has suffered loss of back wages,  loss of pension benefits, loss of insurance benefits, loss of other fringe benefits, loss of the opportunity to continue the gainful employ in which she had been engaged, loss of future earnings and front pay, humiliation, embarrassment, loss of self-esteem, and adverse health effects and loss of time and money in endeavoring to

16

protect herself from Defendant School District's unlawful discrimination, including the costs and reasonable attorney's fees of this action.

86. Prior to filing this action, Plaintiff filed a charge alleging unlawful retaliation and discrimination on the basis of age and gender with the Equal Opportunity Commission (EEOC) and Pennsylvania Human Relations Commission (PHRC). A "right to sue" letter was issued by the EEOC with respect to this charge on May 23, 2023. A true and correct copy of this letter is attached hereto as Exhibit 1. Less than ninety (90) days have elapsed.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant School District and award Plaintiff back pay, front pay or reinstatement, compensation for lost fringe benefits, compensatory damages for humiliation, embarrassment and loss of self esteem, and reasonable costs and attorney's fees.

## COUNT II
### Title VII
### v. Defendant School District
### Retaliation

87. Plaintiff incorporates all averments and allegations from Paragraph 1 through 86 hereof as though the same were set forth herein at length and made a part hereof.

88. On or about April 15, 2010, Plaintiff filed a Complaint against the Defendant School District in the United States District Court for the Western District of Pennsylvania at Case No. 1:10-cv-00088-MPK. This Complaint asserted a hostile environment claim based on gender that included events that occurred on or before October 29, 2009.

89. On or about 2014, Plaintiff filed a second Complaint against the Defendant School

District in the United States District Court for the Western District of Pennsylvania at Case No. 14-93E-MPK. This Complaint asserted a hostile environment claim based on gender and a retaliation claim that included events that occurred between March 2011 and January 2012.

90.  During the October 24, 2022 meeting, Defendant Miller told Plaintiff that the allegations against her were "not a big deal" and should be resolved by the end of the week, though he refused to state what the allegations were.

91.  At the conclusion of the October 24, 2022 meeting, Plaintiff told Defendants Holoman and Miller that she was being treated differently, that she knew when she was being discriminated against, that she had brought lawsuits against the Defendant School District for discrimination before, and that if she had to bring another lawsuit for discrimination she would do so.

92.  By reason of the foregoing, Plaintiff engaged in activity protected under the provisions of Title VII.

93.  On October 25, 2022, Defendant Miller told the substitute teacher who was filling in for Plaintiff that she was going to be there for a while, despite having told Plaintiff a day earlier that the matter would be resolved within a week.

94.  On November 2, 2022, Defendant Holoman told another teacher, Ms. Miller, that Plaintiff shouldn't have brought up or threatened a lawsuit.

95.  Thereafter, the Defendant School District, acting through it servants, agents and employees, retaliated against Plaintiff as follows:

    a.    Defendants Thomas, Holoman and Miller gave directives forbidding Plaintiff to communicate with other staff members and other staff members from communicating with her. This impeded Plaintiff's ability to discuss the allegations with her peers and identify potential favorable

witnesses;

b.    The Defendants conducted the investigation in a way that was deliberately calculated to cause negative rumors about Plaintiff to spread throughout the school and among the community at large, including such acts as ransacking Plaintiff's classroom and "pub room" in front of students while class was in session, placing signs forbidding entry on the "pub room" thereby creating the false implication that something highly incriminating had been found therein, and asking students and staff loaded questions such as "Were you aware that [Plaintiff] was having sex with students at her home?", despite the fact that there was not any evidence or even accusations that she had engaged in such conduct;

c.    Although the Defendants were aware that rumors were circulating in the school and in the community that the police had come to the school to arrest Plaintiff, the Defendants did not release a statement or take any other action to quell this false rumor;

d.    The Defendants sent letters to potential witnesses setting forth all of the allegations against Plaintiff in an effort to influence their testimony against Plaintiff.  This was done even before Plaintiff was informed of what the allegations against her were;

e.    Although the Defendant School District and Defendant Thomas were aware that Plaintiff's ability to respond to the allegations against her were hampered by the existence of the CYS investigation, they did not delay their investigations until the CYS investigation had concluded despite having the authority to do so;

f.    Defendants Thomas, Holoman and Miller did not make any record of student and staff interviews that disputed the veracity of the complaints against Plaintiff, did not include any such exculpatory evidence in the investigatory record, and did not pursue leads that could have absolved Plaintiff;

g.    On November 15, 2022, Defendant Thomas changed Plaintiff's leave status from paid to unpaid without justification, effectively placing her on unpaid suspension;

h.    Defendant Thomas included allegations in his list of charges even after those allegations had been determined to be unfounded by CYS; and

i.    The Defendant School District, acting through its attorney who was, in turn, acting at the direction of Defendant Thomas, extorted Plaintiff into

resigning by threatening to post the full list of unfounded, unsubstantiated charges on the Defendant School District's web site if she did not.

96.  A reasonable person subjected to the acts set forth in Paragraph 95 would find Plaintiff's employment environment abusive and hostile.

97.    The Defendant School District, acting through its agents, servants, and/or employees, was motivated by an intent to retaliate against Plaintiff because of her protected activity when performing the foregoing acts.

98.  The foregoing acts would dissuade an employee from making or supporting a claim of discrimination.

99.  The foregoing acts were carried out by Plaintiff's supervisors such that there is a basis for vicarious liability.

100.  The foregoing acts caused Plaintiff to suffer from stress, anxiety, depression and an extreme loss of self esteem.

101.  By reason of the foregoing, the Defendant School District, acting through its servants, agents and employees, knowingly permitted and created a hostile environment because of Plaintiff's prior protected activity.  As set forth fully herein, the harassment and disparate treatment was sufficiently severe to alter the terms and conditions of Plaintiff's employment.

102.  Because Plaintiff's resignation was the product of extortion, it was effectively a termination.

103.  In the alternative, Plaintiff was constructively discharged because the conditions of her employment had become so intolerable that a reasonable person in her position would have felt compelled to resign.

104.  By reason of the foregoing, the Defendant School District unlawfully retaliated

against Plaintiff for engaging in activity protected under the provisions of Title VII, and in doing

so, the Defendant violated Title VII, 42 U.S.C. §2000e *et seq*.

105.  As the direct and proximate result of the Defendant School District's actions set

forth above, the Plaintiff has suffered loss of back wages,  loss of pension benefits, loss of

insurance benefits, loss of other fringe benefits, loss of the opportunity to continue the gainful

employ in which she had been engaged, loss of future earnings and front pay, humiliation,

embarrassment, loss of self-esteem, and adverse health effects and loss of time and money in

endeavoring to protect herself from Defendant School District's unlawful discrimination,

including the costs and reasonable attorney's fees of this action.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment

in her favor and against the Defendant School District and award Plaintiff back pay, front pay or

reinstatement, compensation for lost fringe benefits, compensatory damages for humiliation,

embarrassment and loss of self esteem, and reasonable costs and attorney's fees.

### COUNT III
### 42 U.S.C. § 1983
### v. Defendants Thomas, Holomon, Miller and Defendant School District

106.  Plaintiff incorporates by reference all averments and allegations from Paragraphs 1

through 105 as though the same were set forth herein at length and made a part hereof.

107.  Defendant Thomas, by virtue of his position as Superintendent of Defendant School

District, is the highest ranking official within the Defendant School District.  At all times

relevant hereto, Defendant Thomas acted under color of state authority.

108.  As Superintendent, Defendant Thomas had the authority to establish policy and was directly responsible for determining how investigations of teacher misconduct were conducted, how evidence was collected, what evidence was placed in the investigatory record, and how and when notice of charges were provided.  Defendant Thomas was also the fact-finder and determining official for Loudermill hearings.

109.  Defendant Holomon, by virtue of his position as a Co-Principal of Franklin Jr. Sr. High School, was one of the two highest ranking officials at that school.  At all times relevant hereto, Defendant Holoman acted under color of state authority.

110.  Defendant Miller, by virtue of his position as a Co-Principal of Franklin Jr. Sr. High School, was one of the two highest ranking officials at that school.  At all times relevant hereto, Defendant Miller acted under color of state authority.

111.  As Co-Principals of Franklin Jr. Sr. High School, Defendants Holomon and Miller were responsible for questioning students and staff as well as preparing the witness summaries which were to be part of the investigative record.

112.  Defendants Thomas, Holomon and Miller violated Plaintiff's right to procedural due process under the Fourteenth Amendment of the US Constitution through the following actions:

      a.    Defendants Holoman and Miller, acting at Defendant Thomas's direction, refused to give Plaintiff notice of the allegations that had been made against her during the period of October 24, 2022 through November 7, 2022, even though detailed summaries of the allegations were provided to potential unfavorable witnesses against Plaintiff;

      b.    Defendants Thomas, Holoman and Miller gave directives forbidding Plaintiff to communicate with other staff members and other staff members from communicating with her.  This "gag order" impeded Plaintiff's ability to discuss the allegations against her and identify

22

potential favorable witnesses;

c.      The Defendants sent letters to potential witnesses setting forth all of the allegations against Plaintiff in an effort to influence their testimony against Plaintiff.  This was done even before Plaintiff was informed of what the allegations against her were;

d.      Defendants Thomas, Holoman and Miller made their intent to terminate Plaintiff's employment clear at the very start of the investigation. Defendant Miller did this by telling the substitute brought in to teach in Plaintiff's stead that she was going to be there for a while, and Defendants Thomas and Holoman by telling numerous staff members in early November 2022 that Plaintiff would not be coming back to work;

e.      Although Defendant Thomas was aware that Plaintiff's ability to respond to the allegations against her were hampered by the existence of the CYS investigation, he did not delay the investigations until the CYS investigation had concluded despite having the authority to do so;

f.      Defendants Thomas, Holoman and Miller did not make any record of student and staff interviews that disputed the veracity of the complaints against Plaintiff, did not include any such exculpatory evidence in the investigatory record, and did not pursue leads that could have absolved Plaintiff;

g.      On November 15, 2022, Defendant Thomas changed Plaintiff's leave status from paid to unpaid prior to any resolution of the charges against her, effectively placing her on unpaid suspension pending the results of the investigations.  Defendant Thomas' decision was ratified by the Defendant School District's school board based on the information he provided to them;

h.      Defendant Thomas discounted and ignored the exculpatory evidence offered by Plaintiff on her own behalf, thereby making a credibility determination based on Plaintiff's status as a respondent;

i.      Defendant Thomas included allegations in his list of charges that had been determined to be unfounded by CYS; and

j.      Defendant Thomas directed the Defendant School District's labor attorney to extort Plaintiff into resigning by threatening to post the full list of unfounded, unsubstantiated charges prepared by Defendant Thomas on the Defendant School District's web site if she did not.  This deprived Plaintiff of the opportunity to defend herself against the charges at a full evidentiary

hearing.

113.  Defendants Thomas, Holoman and Miller knew or should have known of the requirements of procedural due process as the minimum requirements under Title IX for fair investigations of sexual harassment in a school setting are set forth in the Department of Education regulations, 34 C.F.R. § 106.45.  The requirements of procedural due process have also long been established by case law.

114.  Defendants Thomas, Holoman and Miller conducted the investigation in a way that was deliberately calculated to cause negative rumors about Plaintiff to spread throughout the school and among the community at large, including such acts as ransacking Plaintiff's classroom and "pub room" in front of students while class was in session, placing signs forbidding entry on the "pub room" thereby creating the false implication that something highly incriminating had been found therein, and asking students and staff loaded questions such as "Were you aware that [Plaintiff] was having sex with students at her home?" when there was not any evidence or even accusations that she had engaged in such conduct.

115.  Although the Defendants were aware that rumors were circulating in the school and in the community that the police had come to the school to arrest Plaintiff, the Defendants did not release a statement or take any other action to quell this false rumor.

116.  Prior to October 2022, Plaintiff had enjoyed a good reputation and high standing in the community and was known to be a distinguished teacher who was viewed by her students as a motherly figure.

117.  As a result of Defendant Thomas, Holoman, and Miller's actions in fomenting extremely negative rumors about Plaintiff, failing to take any action to quell the rumors, and

preventing Plaintiff from having an opportunity to clear her name by extorting her resignation, Plaintiff's reputation was harmed to the extent that she can no longer go out in public without being met with hostility and suspicion.

118.  The nature and widespread communication of the rumors and allegations against Plaintiff are such that Plaintiff's ability to find employment in the field of teaching is and will be substantially impaired.

119.  On January 27, 2023, Attorney Zaruto, at the direction of Defendant Thomas, sent an email to Plaintiff's union attorney stating that a special meeting of the Defendant School District's board of directors would be held on February 1, 2022 for the purpose of approving the list of charges against Plaintiff.  Attorney Zaruto further stated that the full list of charges prepared by Defendant Thomas on January 23, 2023 would be posted on the Defendant School District's website twenty-four hours prior to said meeting unless Plaintiff resigned.

120.  On January 31, 2023, Attorney Zaruto sent an email to Plaintiff's union attorney reiterating that Plaintiff had until 4:00 p.m. that day to resign or risk having the charges posted on the Defendant School District's web page.

121.  Plaintiff could not allow her reputation be further damaged by the public posting on the internet of the unsubstantiated and unfounded charges against her, particularly as those charges would then be readily and permanently available to any future potential employers, students and parents.  Accordingly, Plaintiff tendered her involuntary resignation at 3:57 p.m. on January 31, 2023.

122.  Because Plaintiff's resignation was the product of extortion that did not leave Plaintiff any viable alternative, it was effectively a termination.

123.  In the alternative, Plaintiff was constructively discharged because the conditions of her employment had become so intolerable that a reasonable person in her position would have felt compelled to resign.

124.  By reason of the foregoing, Defendants Thomas, Holoman and Miller violated Plaintiff's right to procedural due process which resulted in the deprivation of Plaintiff's property interests in her compensation and her continued employment as well as the deprivation of her liberty interest in her reputation.

125.  Defendant School District is liable for the above violation of rights and deprivation of property and liberty interests because Defendant Thomas, who participated in nearly all of the alleged conduct, has policy making authority within the Defendant School District, his decision to place Plaintiff on unpaid leave was ratified by the Defendant School District's school board, and the extortion of Plaintiff's resignation was carried out by the Defendant School District's labor attorney, acting at the direction of Defendant Thomas.

126.  As the direct and proximate result of the Defendants' actions set forth above, the Plaintiff has suffered loss of back wages,  loss of pension benefits, loss of insurance benefits, loss of other fringe benefits, loss of the opportunity to continue the gainful employ in which she had been engaged, loss of future earnings and front pay, humiliation, embarrassment, loss of self-esteem, and adverse health effects, damage to her reputation and standing in the community, and loss of time and money in endeavoring to protect herself from Defendants' unlawful discrimination, including the costs and reasonable attorney's fees of this action.

127.  For the reasons set forth herein, the individual Defendants acted with malice and with reckless disregard to the Plaintiff's federally protected rights such that an award of punitive

damages is appropriate.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Thomas, in both his individual and official capacity, Defendants Holoman and Miller, in their official capacities, and the Defendant School District and award Plaintiff back pay, front pay, compensation for lost fringe benefits, compensatory damages for humiliation, embarrassment and loss of self esteem, compensatory damages for harm to her reputation, punitive damages, and reasonable costs and attorney's fees.

Respectfully submitted,
LAW OFFICES OF NEAL A. SANDERS

Dated: August 15, 2023                    By:/s/Neal A. Sanders
                                          Neal A. Sanders, Esquire
                                          PA ID NO. 54618
                                          Counsel for Plaintiff,
                                          Marcy Brown

                                          Law Offices of Neal A. Sanders
                                          262 South Water Street, Suite 200
                                          Kittanning, PA 16201
                                          (724) 919-8884

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

                                          By:/s/Neal A. Sanders
                                               Neal A. Sanders, Esquire